**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorenia Buelna, et al., | No. CV-21-00216-TUC-SHR |
| Plaintiffs, | **Order Re: Motion to Dismiss** |
| v. | |
| Mark Dannels, et al., | |
| Defendants. | |

Defendants Cochise County Board of Supervisors and Santa Cruz County Board of Supervisors ("Defendants") have filed a Motion to Dismiss the Complaint against them (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 5.) For the following reasons, the Court grants the Motion to Dismiss in part and denies it in part.

**I.  Background**

The following facts are derived from Plaintiff's Complaint. (Doc. 1.) On February 23, 2020, Aaron Estrada died as a result of hanging himself while under the care and custody of Cochise County Jail. (Doc. 1-3 at 5.) On May 21, 2021, Plaintiff Lorenia Buelna, Estrada's mother, and Sara Babuca Lucero, parent of Estrada's minor child, filed a Complaint against Defendants alleging civil rights violations under 42 U.S.C. § 1983 and

---

[1] Defendants have requested oral argument, but the Court finds oral argument will not aid in resolution of the issue raised. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(a); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.").

a wrongful-death claim under Arizona state law.² (Doc. 1-3 at 2, 8-14.)

Estrada was arrested in Santa Cruz County on or about December 9, 2019 and booked into Santa Cruz County Jail on charges of first-degree murder, kidnapping, unlawful imprisonment, child abuse, and endangerment. (Doc. 1-3. at 5.) Estrada had a substantive criminal history and, most notably, in 2011 he was sentenced to supervised probation for threatening to use a drug cartel to have seven police officers murdered, disappeared, or decapitated. (*Id.*) Estrada was an unpopular inmate, and his 2011 conviction earned him the moniker "cop killer," which was used by jail personnel. (Doc. 1-3. at 6.) Estrada told his family he was generally introduced to other officers and jail staff as the "guy who threatened to kill us." (*Id.*) Plaintiffs allege Estrada was: "systematically taunted by jail staff who continuously challenged [Estrada] to try to kill them"; routinely subjected to "verbal and physical torment" from the officers; given the lowest priority for meals, recreation, hygiene, clothing, and visitation; regularly denied meals or provided food that was "cold, stale or almost indigestible, including being served what appeared to be dog food on several occasions . . . and threatened with punishment should he not eat it." (*Id.*)

After several weeks of solitary confinement, Estrada was transferred from Santa Cruz County Jail to Cochise County Jail for unspecified security reasons. (*Id.*) Plaintiffs allege the Santa Cruz County Sheriff was aware that Estrada would need to be transported to numerous future court appearances in Nogales, Arizona but nevertheless arranged to transfer Estrada to Cochise County Jail to punish him. (Doc. 1-3 at 6-7.) Pima County Adult Detention Center has a facility approximately one hour away from Nogales that has specific housing for unpopular inmates which would not require solitary confinement type restrictions. (Doc. 1-3 at 7.) On the other hand, Cochise County is approximately two hours away from Nogales and it could not properly house Estrada because, according to Plaintiffs, the Cochise County Sheriff has admitted the Cochise County Jail is ill-equipped

---

²Plaintiffs filed their Complaint in Cochise County Superior Court, but the case was later removed to the United States District Court District of Arizona by Defendants pursuant to 28 U.S.C. § 1441 and Rule 3.6 of the Local Rules of Civil Procedure. (Doc. 1.)

to properly house inmates safely in solitary confinement and there is a "well-documented and known pattern of practice that Cochise County Jail manifests blatant 'deliberate indifference' toward solitary-confinement inmates." (*Id.*)

While incarcerated in Cochise County Jail, law enforcement personnel "incessantly perpetuated psychological and physical abuse" upon Estrada. (*Id.*) Plaintiffs allege "[t]he perpetual taunting of Aaron Estrada, while he was housed in an ill-equipped solitary confinement cell, had an obvious exaggerated psychological effect." (*Id.*) Estrada called his mother, Plaintiff Buelna, on different occasions and pleaded with her to help him. (*Id.*) Estrada told his mother the guards had threatened him that if he continued to complain, other inmates would be allowed to access his cell to "shut him up." (*Id.*) He also told his mother that the guards encouraged him to kill himself to avoid what was going to happen to him. (*Id.*) During Estrada's final telephone conversation with his mother, Estrada told her the guards threatened to kill him. (Doc. 1 at 8.)

Defendants filed this motion to dismiss arguing the Complaint against them should be dismissed for failure to state a claim because they are non-jural entities not subject to suit, the Complaint does not properly assert a claim under *Monell v. Dep't of Soc. Service*, 436 U.S. 658 (1978), and a county cannot be liable under Arizona law for the acts of a county sheriff or the sheriff's employees or personnel. (Doc. 5 at 2.)

**II.    Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. Such dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Generally, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Lazy Y. Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III.  Non-Jural Entities and County Name

Defendants argue they are non-jural entities who are not subject to suit because there is no Arizona statutory provision allowing a county board of supervisors to be sued. (Doc. 5 at 2-4, 7.) Defendants are mistaken.[3] Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of an entity other than an individual or corporation to sue or be sued is governed by state law. In Arizona, "[a] court has no jurisdiction until a party is brought before it who legally exists and is legally capable of being sued." *Yamamoto v. Santa Cruz Cnty. Bd. of Supervisors*, 606 P.2d 28, 29 (Ariz. Ct. App. 1979). Governmental entities incapable of being sued are considered non-jural entities and should be dismissed from a case. *See Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). In Arizona, "a governmental entity may be sued only if the legislature has so provided." *Id.* And, under Arizona law, "[t]he powers of a county shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law." A.R.S. § 11-201(A). Among these powers is the power to "[s]ue and be sued." *Id.* Therefore, an Arizona statute expressly provides that a county board of supervisors may be sued as a governmental entity. *See* § 11-201(A)(1); *Braillard*, 232 P.3d at 1269. Accordingly, the Court concludes a county board of supervisors is an entity that can be

---

[3]Plaintiffs assert Defendants' argument is "misplaced" because "[o]ne need only visit a federal PACER account to view seemingly infinite district and appellate cases featuring defendant county boards of supervisors." (Doc. 8 at 2.) Plaintiffs, however, fail to cite any such cases, or any other authority, to support their argument. The Court reminds counsel for both parties of Federal Rule of Civil Procedure 11, which requires parties to make only "claims, defenses, and other legal contentions" that "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

sued.

Defendants also argue Rule 17(d) of the Arizona Rules of Civil Procedure "requires that actions brought against a county shall be in its corporate name, i.e., the name of the county in question." (Doc. 5 at 3.) It appears Defendants meant to cite Rule 17(c) of the Arizona Rules of Civil Procedure which provides: "An action brought by or against a county or an incorporated city or town must use its corporate name when identifying it as a party." Plaintiffs argue that naming the boards of supervisors necessarily includes the county because "boards of supervisors can only function by virtue of their mandatory connection to a county" and alternatively, if the Court disagrees, a leave to amend the Complaint would "cure 'county name' concerns and avoid an injustice." (Doc. 8 at 2, 5.) Defendants argue that Cochise County and Santa Cruz County need to appear in the caption of the complaint and a leave to amend the complaint "is unnecessary and would be futile" because the counties cannot be liable here. (Doc. 9 ¶¶ 2-3.) The parties cite no authority, and the Court is unaware of none, supporting whether a county board of supervisors and a county are synonymous in this circumstance. Nonetheless, the Court will grant Plaintiffs leave to amend to cure the county name concerns because, for the reasons explained below, the Court finds doing so would not be futile.

**IV.     Federal § 1983 Liability and Respondeat Superior**

Defendants argue the Complaint "does not properly assert a *Monell* claim." (Doc. 5 at 2.) Section 1983 provides a remedy for violations of rights secured by the Constitution by persons acting under the color of state law. 42 U.S.C. § 1983. Municipalities and other local governing bodies, like counties, are "persons" subject to § 1983 liability, but "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 690-91; *see also Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (municipality may not be sued solely because an injury was inflicted by its employees or agents). To prevail on a claim against a municipal entity for a constitutional violation, "a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or

custom of the local governmental unit." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc). Defendants argue Plaintiffs have not "adequately set forth claims or allegations that satisfy the *Monell* requisite elements" with respect to their inmate-abuse and failure-to-train claims under § 1983. (Doc. 5 at 6.) The Court addresses each of these claims in turn.

### A. Deliberate Indifference and Inmate abuse

One way to establish municipal liability under *Monell* is to demonstrate a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir.2002) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 793-95 (9th Cir. 2017) (reasonable jury could conclude at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over course of one year amounts to custom or practice of deliberate indifference).

Here, Plaintiffs allege Santa Cruz County and Cochise County were acting in concert and the "systematic torment and abuse by jail personnel" in those counties "constitute 'deliberate indifference to inmate[] safety," the "calculated decision to transfer an inmate to [a] facility[] where identical abusive treatment was a virtual certainty, reinforces this conscious indifference to an inmate's wellbeing," and "the actions taken by the individual Defendants demonstrate deliberate indifference and complete disregard" for Estrada and human life. (Doc. 1-3 at 2, 10.) Specifically, Plaintiffs allege Estrada was routinely physically and verbally tormented; given the lowest priority for meals, recreation, hygiene, clothing, and visitation; deprived of food; provided stale or indigestible food;

threatened; and taunted. (Doc. 1-3 at 6-8.) They further assert that "as a direct and proximate result of extreme deliberate indifference for inmate safety, jail policy, constitutional and civil rights" and "after months of psychological and physical abuse at the hands of [jail personnel]," Estrada was discovered attempting to hang himself, and died shortly thereafter. (Doc. 1-3 at 8.) According to Plaintiffs, several wrongful-death claims have been brought against Cochise County Jail in the past and the conditions and treatment causing Estrada's death resemble the pattern of inmate-suicide deaths in Cochise County Jail. (Doc. 1 at 2, 19.) Construing the Complaint's allegations liberally, Plaintiffs have sufficiently alleged a longstanding-practice theory of deliberate indifference and inmate abuse. However, to the extent it appears Plaintiffs may be attempting to assert this claim under the theory of respondeat superior (*see* Doc 1-3, Section "VII. Vicarious Liability"), as discussed above, Plaintiffs may not proceed under a respondeat superior theory with respect to this § 1983 claim. *See Monell*, 436 U.S. at 690-91 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

### B. Inadequate Training and Supervision of Employees

Under certain circumstances, a plaintiff may also establish municipal liability by demonstrating the alleged constitutional violation was caused by a failure to adequately train municipal employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016). In *Harris*, the United States Supreme Court "in essence, established a three-part test with respect to when the inadequacy of police training may serve as the basis for municipal liability under section 1983." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (citing *Harris*, 489 U.S. 378). This test consists of three elements: (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the municipality officials must have been deliberately indifferent "'to the rights of persons with whom the [municipality officials] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Id.* (internal citations omitted).

Here, Plaintiffs allege Defendants failed to ensure officers and personnel were

adequately trained to deal with unpopular inmates. (Doc. 1-3 at 10.) Specifically, they allege Defendants were aware of the history of suicide within Cochise County Jail, failed to properly care for inmates because jail personnel "lacked training and supervision concerning restraint of their individual prejudices toward unpopular inmates," and failed to ensure officers received proper crisis intervention training (CIT). (Doc. 1-3 at 11.) According to Plaintiffs, the "[d]eficient training of officers coupled with in-jail conduct constitutes 'deliberate indifference' toward well-established constitutional rights and human life." (*Id.*) Construing the Complaint's allegations liberally, Plaintiffs have sufficiently alleged an inadequate-training theory. However, as discussed above, to the extent it appears Plaintiffs may be alleging this claim through a respondeat superior theory, Plaintiffs may not proceed on such a theory with respect to this § 1983 claim. *See Monell*, 436 U.S. at 690-91.

### V. State Wrongful-Death Claim and Respondeat Superior

Defendants argue "[i]t is the Sheriff that has respondeat superior liability for state law claims alleging tortious conduct by the Sheriff's staff and personnel," not an Arizona county. (Doc. 5 at 2, 4.) "For an employer to be held vicariously liable for an employee's negligent acts, the employee must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business." *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011), aff'd, 280 P.3d 599, 604 (Ariz. 2012). A county is generally not vicariously liable for the conduct of an elected official whose duties are imposed by state statutes and constitutional provisions. *Hernandez v. Maricopa Cnty.*, 673 P.2d 341, 344 (Ariz. Ct. App. 1983); *Yamamoto*, 606 P.2d at 30. For example, a county is not liable for torts committed by its sheriff's office when it has no right of control over the Sheriff or his deputies' behavior. *See Fridena v. Maricopa Cnty.*, 504 P.2d 58, 61 (Ariz. 1972) (county not liable because no right of control over Sherriff or his deputies service of writ of restitution).

In their Complaint, Plaintiffs appear to allege Defendants are vicariously liable for the wrongful-death claim brought under state law. (Doc. 1-3 at 11-14.) Although a sheriff is a county officer under A.R.S. § 11-401(A)(1), the power and responsibilities of the

sheriff are established by the Arizona Legislature, not the county. *See* A.R.S. § 11-441; *see also Fridena*, 504 P.2d at 61. Plaintiffs have not alleged facts to support that the sheriffs or their staff were acting outside the scope of their statutory duties or that Defendants had the right to control the behavior they complain of. Thus, Defendants cannot be held vicariously liable for the actions the sheriffs carried out based on these allegations. *See Fridena*, 504 P.2d at 61. Accordingly, the Arizona law wrongful-death claim (*see* Doc 1-3, Section "VII. Violation of Wrongful Death Statute") cannot proceed on a respondeat superior theory and is dismissed without prejudice.

## VI. Leave to Amend

As noted above, Plaintiffs have requested leave to amend their Complaint to "cure 'county name' concerns and avoid an injustice." (Doc. 8 at 2, 5.) Defendants oppose this request, arguing it is "unnecessary and would be futile." (Doc. 9 at 3.)

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001)). Thus, the Court shouldn't deny leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court will grant Plaintiffs leave to amend to correct the naming concerns. Additionally, the Court notes Plaintiff's Complaint is difficult to follow at times because paragraphs and claims are not ordered in a logical or sequential fashion. Plaintiffs may file a First Amended Complaint for the limited purpose of correcting the names of the county Defendants, paragraph numbers, headings, and general organization of the complaint. No other changes or amendments will be permitted without written consent of Defendants or further leave of Court. If the First Amended Complaint contains additional amendments that go beyond those stated above, the Court may strike it without further notice.

…

…

### VII. Conclusion

For the foregoing reasons, the Court concludes Plaintiffs may not proceed with their vicarious liability or respondeat superior theories on any of their claims, but Plaintiffs have alleged facts sufficient to survive Defendants' Motion to Dismiss with respect to their § 1983 claims for deliberate indifference/inmate abuse (Doc. 1-3 at 9 ("First Claim: 42 U.S.C.A. § 1983: Deliberate Indifference and Inmate Abuse")) and inadequate training and supervision (Doc. 1-3 at 10 ("Second Claim: 42 U.S.C.A. § 1983: Inadequate Training and Supervision).)  The Court will also grant Plaintiffs leave to amend their Complaint to correct the concerns noted above.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 5) is **granted in-part** to the extent Plaintiffs' vicarious liability/respondeat superior theories are dismissed with prejudice with respect to their § 1983 claims and without prejudice as to the Arizona law wrongful-death claim.  It is **denied** in all other respects.

**IT IS FURTHER ORDERED** Plaintiffs are granted leave to amend and shall file their First Amended Complaint **on or before Monday, November 29, 2021**.

Dated this 27th day of October, 2021.

Honorable Scott H. Rash
United States District Judge